Mansfield, J.
Error to Richmond Probate Court.
This cause comes into this court on petition in error of F. L. May, praying that the judgment of the probate court in affirming on appeal an order made by the township trustees of Plymouth township, confirming the apportionment made by the ditch supervisor of that township for the cleaning out of a certain ditch, be affirmed.
The original proceedings before the township trustees were taken under an act, 99 O. L., 238 (General Code, 6691), providing for the .apportioning and constructing public ditch and drain work, which authorizes in substance the township ditch supervisor, for the purpose of cleaning out and keeping in repair all township ditches, to divide them into working sections and apportioned to the landowners, corporate roads, railroads, township and county, according to the benefits received.
From the apportionment so made under the statute (Section 6691, General Code), an appeal was taken to the probate court, *338 and upon hearing, the court made a separate finding of facts and conclusions of law, which conclusions of law in confirming the order of the township trustees and the ditch supervisors in the apportionment of the work assigned to the plaintiff in error, F. L. May, is brought for review by this proceeding. The finding of facts by the probate court are as follows:
1. The court finds that there was apportioned to the appellant, by the township ditch supervisor and trustees of said township, 560 feet of the work of cleaning out a township ditch in said township, known as the Hutchinson ditch.
2. That the said ditch passes over and along the west margin of appellant’s farm for about 560 feet and adjacent to the line fence between the lands of appellant and the land of Dempsey lying on the west, said ditch being about three or four feet east of the line fence.
3. That the watershed of the land adjoining the ditch at this particular point is somewhere west of the ditch.
4. The natural slope of all of the appellant’s lands along and adjoining said ditch, except a very small portion and an indirect drainage from a clover field as shoym in the finding next following, is away from said ditch, and that said lands of the appellant, can not be drained into said ditch, but must be drained in another direction.
5. That appellant owns a clover field which lies north of the lands which have the ditch on their west margin, which clover field does not adjoin the ditch, but there is from two to five acres in said clover field which have a natural drainage into marshes on the lands of Dempsey lying on the west; that said ditch passes through these lands of Dempsey and the water on this Dempsey land including the water flowing onto them from appellant’s clover field and other water coming thereon, passes into the ditch on said Dempsey lands.
6. That in time of considerable rainfall the water from the lands on the west and northwest of appellant’s lands would flow from a northwesterly to a southwesterly direction over the lands of the appellant.
7. That said ditch runs from north to south along the west margin of appellant’s lands about 560 feet.
*339 8. That said ditch, when originally constructed, intercepted a considerable of the water coining from the west and northwest and prevented it from flowing over appellant’s lands.
9. That when said ditch is re-cleaned, as required by the apportionment made by the ditch supervisor and trustees, it will prevent a considerable water from flowing over the appellant’s lands off from the adjoining lands on the north and northwest, which would flow over appellant’s lands if such were closed and abandoned.
As its conclusions'of law from the foregoing facts, the court finds that appellant can be legally apportioned the work of cleaning out that portion of said ditch which passes over and along the west margin of his lands as shown in paragraph 2 of the finding of facts.
It is therefore ordered and adjudged by the court that the apportionment made by the ditch supervisor'of Plymouth township, and the action of the board of trustees of said township, in affirming the same, be and the same hereby is affirmed.
From this finding of facts it appears that the lands of Dempsey adjoin the lands of the plaintiff in error on the west and northwest; that immediately east of the lands of Dempsey and adjoining them are two fields of the plaintiff in error, one known as a clover field, to the north, from two to five acres of which drain naturally in a westerly direction onto the lands of Dempsey and from thence into the ditch that finally finds its way along the western line of the other field belonging to May. The field of May that lies to the south, prior to the construction of the ditch along or near the west line thereof, received the water from the Dempsey land adjoining it on the west, but since the construction of the ditch along the west line of the May tract, the waters coming from the 'west, that otherwise would naturally flow east upon the land of May, are intercepted by the ditch, and by reason thereof the land of May is relieved of any burden of such waters, •which but for such intercepting ditch would be cast down upon his land. In making the apportionment the ditch supervisor apportioned to May 560 feet, being the entire length of the ditch along the west boundary line of the land of May, the same being practically the whole length of the ditch on his land,
*340 It is apparent from the several findings of fact made by the probate judge, that in determining what area of the lands of May should be taken into consideration as benefited in the cleaning out of the ditch in question, that the court took into consideration two to five acres of the clover field on the north drained in a westerly direction on to the lands of Dempsey and thence into an extension of said ditch; also, that the waters coming from the Dempsey land on the west of the south field of May were intercepted by the ditch along the west line of the south field, and that by.reason of that fact the south field of May was relieved of the burden of the waters which would otherwise flow upon it were there no intercepting by said ditch, and that therefore a benefit was derived to said south field.
It is contnded by the plaintiff in error, that the finding of facts upon their face that the probate court and the township trustees in determining the benefits to be derived by May from the cleaning out of the ditch in question, took into consideration the fact that the ditch in question intercepted the waters coming from the Dempsey tract, which but for such ditch would flow down upon the land of May, notwithstanding the fact that it appears from the finding of said probate court that the natural drainage of nearly that entire field was away from said ditch and that said ditch in fact, offered no direct drainage of any appreciable amount to said field. This appearing from the finding of facts, it is contended that the probate court and trustees, in taking that situation into consideration in determining that May was benefited by such intercepting ditch, acted contrary to the rule of law laid down in Blue v. Wentz, 54 Ohio St., 247, and in the case of Mason v. Fulton County Commissioners, 80 Ohio St., 151.
From the finding of facts it is also disclosed that the south field . of May, by reason of the topography of the ground drains in a southerly and southwestern direction, and that very little, if any, portion of it naturally can drain into 'the ditch in question, and so the question arises whether or not a servient estate, which but for the construction of an intercepting ditch would naturally receive the surface waters from a dominant estate, can be held as benefited under the law for the maintenance of a ditch that *341 intercepts the flow of the water from the dominant estate down upon the servient estate, the natural watershed of which is in the direction away from such ditch.
In Blue v. Wentz, supra, in the third syllabus, the court lays down this rule of law:
‘ ‘ In making an assessment on lands benefited by artificial drainage, the extent of their watershed is not the proper rule, but the amount of surface water for which artificial drainage is required to make them eultivatible and the benefits that will accrue to the land from such drainage. However much water may fall on them or arise from natural springs, if by reason of their situation they have adequate natural drainage therefor, they are not liable for the cost of artificial drainage to other lands. ’ ’
In the case at bar, from the finding of facts it does not appear that the south field of May has a drainage towards the east and southeast, and that if it does not drain into the ditch in question and the ditch can afford no drainage to it the only purpose of the ditch, so far as the adjoining fields are concerned in that locality, is to receive the surface water from the Dempsey tract on the west.
In the case of Mason v. Fulton County Commissioners, supra, the court in the syllabus lays down the following proposition :
1 ‘ A landowner may in the reasonable use of his land drain the surface water from it into its natural outlet, a water course, upon his own land, and thus increase the volume and accelerate the flow of water without incurring liability for damages to owners of lower lands; and his land is not subject to assessment for the cost of a ditch or an improvement that will not benefit its drainage, but is constructed to prevent overflow from the water course or to benefit the drainage of the servient lands. ’ ’
And in Blue v. Wentz, supra, in the first paragraph of the syllabus, this rule is laid down:
“Where the lands of an owner, by reason of their situation, are provided with sufficient natural drainage, they are not liable for the costs and expenses of a ditch necessary for the drainage of other lands, simply for the reason that the surface water of' his lands naturally drain therefrom to and upon the lands requiring artificial drainage.”
*342 In other words, the servient estate can not require the dominant estate to assist in the construction of a ditch that facilitates the flow of water off the land of the servient estate simply upon the ground, that some of the water being surface water, naturally flows.off the dominant estate onto the servient estate; and it would also seem that where a ditch is constructed, which intercepts the waters of the dominant estate, but which offers no direct drainage to the servient estate, that the mere fact that waters, but for such intercepting ditch, would naturally flow off the dominant estate onto the servient estate, affords no sufficient reason to hold that the servient estate would be benefited by reason of such ditch. It is true that such ditch relieves to a greater or less extent, the burden that otherwise would naturally fall upon the servient estate, but this would be true of each parcel of land in the watershed lying below the intercepting ditch, and to ascertain the benefit to each possible lower servient estate by reason of the construction of said ditch would present a situation that in the end would be .almost impossible of calculation, and would result possibly in a more inequitable ascertainment of benefits than would be to hold to a rule which was absolutely certain and which in a fair measure was consistent with the benefits to be derived.
So taking these findings of facts as máde by the probate court, and the law as this court understands it, we think the court erred in affirming the apportionment made by the ditch supervisor; that in affirming the assesment the lower court took into consideration the fact that the south field of May was relieved of a great deal of burden by the ditch intercepting the waters from the Dempsey - land, which but for said ditch would otherwise naturally flow down upon the land of May.
As this case must be reversed, it is proper that the court should lay down, a rule as to what should be taken into consideration in determining what benefits May would derive from the cleaning out of this ditch, or at least what lands should be taken into consideration in determining the question.
Under the ease'of Blue v. Wentz, supra, in making the assessment for the construction of a ditch it would seem that the water coming off of the clover field of May, and flowing down upon the *343 Dempsey land and thence into the ditch, could not be taken into consideration in ascertaining the benefits, i£ .any, to May’s land; but however that may be, the statute, as fax as the cleaning out of the ditch is concerned, steps in and in the judgment of this court modifies the rule that may be inferred from that decision. Section 3 of act, 99 O. L., 238, provides:
“For the cleaning out and keeping in repair of all township and county ditches, it shall be the duty of the township ditch supervisor to divide the same into working sections and apportion the same to the landowners, * * *■ according to the benefits received, and owners of lands not contiguous to the ditch, but the waters from whose lands is carried into the ditch, by means of tile or by passing over the lands of others, shall be required to assist in cleaning out and keeping such ditch in repair. ’ ’ etc.
So that the ditch supervisor could properly take into consideration the waters flowing off the clover field in a westerly direction onto the lands of Dempsey, and thence into the ditch; also, any waters coming from the clover field that flowed directly into the ditch through the lands of May, and also, that portion of the south field of May lying east of the ditch from which any surface drainage finds its' way into the ditch. Taking all these benefits into consideration May could properly be apportioned so much of the work of cleaning out of such ditch, the apportionment to be made on that section, of the ditch on his owm property to the extent, taking these matters into consideration, to which it-appears his land is benefited.
The judgment of the lower court will be reversed for the reasons stated and the apportionment set aside at the cost of the defendant in error. The exceptions of the defendant in error are noted.